UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WESTON GARRETT MILLER,

Petitioner,

v.

JAMES KEY,

Respondent.

CASE NO. 3:18-cv-5700 BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR:  June 7, 2019

The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura.  The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4.  Petitioner filed the petition pursuant to 28 U.S.C. § 2254.

Petitioner was convicted of first degree murder. Petitioner argues that he received ineffective assistance of both trial and appellate counsel but has not shown that he was prejudiced by any errors that either counsel may have committed. Petitioner also alleges prosecutorial misconduct. However, the Washington Supreme Court's finding that any improper prosecutorial conduct did not prejudice petitioner was not unreasonable in light of the evidence.

REPORT AND RECOMMENDATION - 1

1    Finally, petitioner states that the Court of Appeals and Supreme Court violated his constitutional

2    due process and equal protection rights by failing to remand his claim to the trial court to correct

3    the record. As with his other grounds for relief, the state courts' findings that any alleged errors

4    did not prejudice petitioner were not based on an unreasonable application of clearly established

5    federal law, nor based on an unreasonable determination of the facts in light of the evidence.

6         Accordingly, this Court recommends that petitioner's request for habeas relief be denied.

7    This Court also recommends that petitioner is not entitled to a certificate of appealability.

8

9    **BASIS FOR CUSTODY**

10         Petitioner was convicted of first degree murder with firearm enhancement and pled guilty

11    to four counts of unlawful possession of a firearm in the second degree. Dkt. 11-1, p. 665; Dkt. 7,

12    p. 1-2.  He was sentenced to 360 months (Dkt. 11-1, p. 668) and is currently incarcerated at

13    Airway Heights Corrections Center (Dkt. 7, p. 1).

14

15    **FACTUAL HISTORY**
     The Washington State Court of Appeals, in an unpublished decision, stated the facts of

16    petitioner's case as follows:

17

18         Sara DeSalvo and David Carson lived together with [petitioner] in his
     home. DeSalvo and Carson frequently argued, but Carson was never physically

19    violent with DeSalvo. Other than DeSalvo, Carson rarely had disagreements with
     other people. DeSalvo testified that Carson had a soft- spoken and quiet

20    demeanor.

21         [Petitioner] confronted DeSalvo about her fights with Carson. DeSalvo
     testified about the exchange that followed:

22         [Petitioner] told me that—he goes, "Why don't you just shoot

23    [Carson]?" I said, "What the hell you coming in here in the middle
     of my day talking shit like that?" I said, "Don't come in here and

24

do that Weston. Are you crazy?" He goes, "I'll do it for you." I go,
"You will do nothing for anybody."

[Citation omitted] The same day, Carson asked [petitioner], "Dude, did you say
you were going to shoot me?" [Citation omitted]. [Petitioner] responded, "Yeah,
so, it's not like we are friends." [Citation omitted].

Two days later, DeSalvo and Carson were preparing to move out of
[petitioner's] house when they began to argue. At one point, DeSalvo hit her head
on something and screamed for [petitioner]. [Petitioner] knocked on the door and
asked DeSalvo and Carson not to fight. [Petitioner] reiterated his request 15 to 20
minutes later.

[Petitioner] then went to his bedroom, opened a safe, and retrieved his
gun. He loaded it, chambered a round, and concealed the gun in his pocket. He
then knocked on DeSalvo and Carson's door and asked Carson to come out and
talk. Carson complied and stepped out of the room. Carson was neither angry nor
was he carrying any weapon. Carson complied with [petitioner]'s request that he
close the door. DeSalvo then heard three rapid gunshots. She opened the door to
see a puff of smoke and smell gunpowder. Carson, while holding his stomach,
said "Dude, what did you do? You shot me." [Citation omitted]. Carson
subsequently died from the shooting.

DeSalvo begged [petitioner] not to kill her. She fled the house, screaming
for help. [Petitioner] fled in his truck. After getting help, DeSalvo returned to the
house. The police arrived shortly thereafter. DeSalvo did not touch Carson or
move any items.

Upon his arrest, [petitioner] cooperated with the police and gave a video
statement. [Petitioner] admitted to shooting Carson. [Petitioner] said that he
feared for DeSalvo because Carson was an unstable and dangerous person.
[Petitioner] also claimed he feared for himself because DeSalvo and Carson were
conspiring to kill him. [Petitioner] gave different accounts of what happened
when he opened the door to DeSalvo and Carson's room. At first, [petitioner] said
that Carson was holding DeSalvo between himself and the door, and that he
pushed DeSalvo out of the way to get inside and confront Carson. Later,
[petitioner] said that the moment he opened the door, Carson lunged at him with a
knife, and [petitioner] opened fire.

While there was at least one knife inside the room, none of the responding
officers or paramedics located a knife in Carson's hands or near his body. The
medical examiner did not find any defensive injuries on Carson's body. A
ballistics expert concluded from the gunshot residue that Carson was shot from no
more than five feet away.

Dkt. 11-1, p. 779-81; *State v. Miller,* No 44966-8-II, 2014 WL 6790378 at *1-2 (Wash Ct. App. Dec. 2, 2014) (unpublished opinion).

## PROCEDURAL HISTORY

*Direct Appeal, Washington Court of Appeals*

On direct appeal to the Washington Court of Appeals, petitioner's appellate counsel claimed that the trial court: (1) failed to prove beyond a reasonable doubt the element of premeditation; (2) petitioner was denied confrontation rights by not being able to see the jury and have the jury see him; (3) petitioner was denied the right to a fair trial by not being able to see the jury and have the jury see him; (4) petitioner was denied the right to a public trial by not being able to see the jury and have the jury see him; (5) petitioner was denied the right to the presumption of innocence by not being able to see the jury and have the jury see him; (6) petitioner was denied the right to assist his attorney by not being able to see the jury and have the jury see him; (7) petitioner was denied the right to appear by not being able to see the jury and have the jury see him. Dkt. 11-1, p. 701.

Petitioner's pro se Statement of Additional Grounds also claimed: (1) petitioner shot the victim in self-defense (Dkt. 11-1, p.774, 776); (2) the trial court erred by excluding toxicology evidence (Dkt. 11-1, p. 774); (3) the trial court erred by excluding 404(b) evidence of the victim's prior bad acts Dkt. 11-1, p.775); and (4) the trial court erred by admitting evidence of a makeshift silencer (Dkt. 11-1, p. 777). The Court of Appeals affirmed petitioner's judgment and sentence. Dkt. 11-1, p. 779; *Miller*, 2014 WL 6790378. Petitioner did not seek discretionary review of his direct appeal by the Washington Supreme Court. The Court of Appeals issued a mandate on January 16, 2015. Dkt. 11-1, p. 794.

1    *Personal Restraint Petition*

2        Petitioner filed a personal restraint petition with the Court of Appeals claiming: (1)

3    appellate counsel provided ineffective assistance of counsel by including facts in her brief that

4    were not in the record on review; (2) the State's appellate brief relied on facts outside the record;

5    (3) the Court of Appeals erred by basing its direct appeal decision on facts not contained in the

6    appellate record; (4) the superior court erred by not creating an adequate record for appeal; (5)

7    petitioner was denied his right to a sufficiently complete appellate record; (6) the inadequate

8    appellate record prevented petitioner from properly challenging the admission of trial exhibit 19

9    (Dkt. 11-1, Exh. 7); (7) petitioner received ineffective assistance of counsel at trial because

10   defense counsel failed to object to the prosecutors closing remarks; (8) the prosecutor committed

11   misconduct by expressing his opinion regarding the truthfulness of a witness; (9) the prosecutor

12   committed misconduct by stating facts not in evidence; (10) petitioner received ineffective

13   assistance of counsel at trial because defense counsel failed to object to when a juror overheard

14   the trial prosecutors discussing the case outside the courtroom. Dkt. 11-1, p. 796-801. The State

15   refuted these claims and the Court of Appeals dismissed the petition. Dkt. 11-3, p. 133.

16       *Discretionary Review, Washington Supreme Court*

17       Petitioner sought discretionary review with the Washington Supreme Court and raised the

18   following grounds for relief: (1) the Court of Appeals and Supreme Court decisions relied on

19   arguments that relied on evidence outside the record; (2) the Court of Appeals erred by

20   dismissing petitioner's personal restraint petition as frivolous; (3) the Court of Appeals erred by

21   not remanding petitioners case where petitioner made a prima facie showing of prejudice from

22   inadequate record; (4) petitioner's constitutional rights were violated because the trial court

23   failed to provide two versions of trial exhibit 19; (5) ineffective assistance of appellate counsel

24

1   for failure to perfect the record; (6) and that the Court of Appeals improperly determined that the

2   prosecutor did not offer his personal opinion on the credibility of a witness but based his closing

3   remarks on inferences from the evidence. Dkt. 11-3, p. 143. The Supreme Court denied

4   petitioner's motion for discretionary review. Dkt. 11-3, p. 381. Petitioner filed a motion to

5   modify the commissioner's ruling, which the Supreme Court denied. Dkt. 11-3, pp. 386, 480. On

6   August 29, 2018, the Court of Appeals issued a certificate of finality. Dkt. 11-3, p. 482.

7

8                                           **STANDARD OF REVIEW**

9          Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus

10  petition may be granted with respect to any claim adjudicated on the merits in state court only if

11  the state court's decision was contrary to, or involved an unreasonable application of, clearly

12  established federal law, as determined by the Supreme Court, or if the decision was based on an

13  unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

14         A federal court may grant a habeas petition under two circumstances.   First, a federal

15  habeas court may grant the writ if the state court decision is "contrary to" clearly established

16  federal law because the state court arrived at a conclusion opposite to that reached by the

17  Supreme Court on a question of law, or if the state court decides a case differently than the

18  Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529

19  U.S. 362, 405 (2000).  Second, a federal habeas court may grant the writ if the state court

20  identifies the correct governing legal principle from the Supreme Court's decisions but

21  "unreasonably appl[ies]" that principle to the facts of the prisoner's case.  *Id*. at 407.  The

22  Supreme Court has made clear that a state court's decision may be overturned only if the

23  application is "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

24

1  AEDPA requires federal habeas courts to presume the correctness of state courts' factual

2  findings unless applicants rebut this presumption with "clear and convincing evidence."  28

3  U.S.C. § 2254(e)(1).  In addition, review of state court decisions under 28 U.S.C. § 2254(d)(1) is

4  "limited to the record that was before the state court that adjudicated the claim on the merits."

5  *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

6

7  **EVIDENTIARY HEARING**

8  The decision to hold a hearing is committed to the Court's discretion.  *Schriro v.*

9  *Landrigan*, 550 U.S. 465, 473 (2007).  "[A] federal court must consider whether such a hearing

10  could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

11  the applicant to federal habeas relief."  *Landrigan*, 550 U.S. at 474.  In determining whether

12  relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before

13  the state court.  *Pinholster*, 563 U.S. at 181-82.  A hearing is not required if the allegations

14  would not entitle petitioner to relief under 28 U.S.C. § 2254(d).  *Landrigan,* 550 U.S. at 474.  "It

15  follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas

16  relief, a district court is not required to hold an evidentiary hearing."  *Id.*; *see also Pinholster,*

17  563 U.S. at 183.

18  Here, petitioner alleges that a factual element is missing from the record. He alleges that

19  because there is no transcript or DVD of the portion of his police interrogation that was played

20  for the jury, he cannot challenge that inadmissible evidence was played.  However, the facts

21  underlying petitioner's claims are sufficient to establish that a rational fact finder would have

22  found him guilty of the crime. Therefore, the Court concludes that an evidentiary hearing is not

23  necessary to decide this case and petitioner's claims may be resolved on the existing state record.

24

1

**DISCUSSION**

2        Petitioner raises four grounds in his habeas corpus petition: (1) ineffective assistance of

3  appellate counsel on direct appeal; (2) ineffective assistance of trial counsel; (3) prosecutorial

4  misconduct; and (4) violation of due process by failing to correct the record on appeal. Dkt. 7, p.

5  5, 7, 8, 10.

6    **I.    Ineffective Assistance of Appellate Counsel on Direct Appeal**

7        Petitioner argues that his appellate counsel provided ineffective assistance of counsel on

8  direct appeal by failing to perfect the record. Dkt. 7, p. 5.  At plaintiff's trial, petitioner's police

9  interrogation recording was admitted into evidence in its entirety as Exhibit 19 (Dkt. 11-1, p 448-

10  50) but the trial judge excluded any testimony or evidence of a "21-foot rule" (Dkt. 11-1, p. 432).

11  Part of the interrogation recording contained discussion of the 21-foot rule, and that portion of

12  the recording was to be omitted from evidence published to the jury. Dkt. 11-1, p. 432, 448.  As

13  such, petitioner alleges that the transcript of the recording published to the jury was not

14  incorporated into the record on appeal. Appellate counsel cited to this transcription in her

15  appellate brief.  Petitioner alleges that appellate counsel provided ineffective assistance because

16  she "[c]ited to a transcript of [petitioner's] interrogation that was not in the report of proceedings,

17  was not designated in the clerk's papers at trial or on appeal." Dkt. 7, p.5.

18        Under the Due Process Clause of the Fourteenth Amendment, criminal defendants are

19  entitled to the assistance of counsel on criminal appeals as of right. *Douglas v. California*, 372

20  U.S. 353 (1963). The due process right to appellate counsel also includes the right to the

21  effective assistance of appellate counsel. *Evitts v. Lucey,* 469 U.S. 387, 397 (1985). The proper

22  standard for evaluating petitioner's claim that appellate counsel was ineffective is that

23  enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984). *See Smith v. Murray,* 477 U.S.

24

527, 535-536 (1986) (applying *Strickland* to a claim of attorney error on appeal). Petitioner must show that: (1) his counsel was objectively unreasonable, *see Strickland,* 466 U.S. at 687-91, in failing to find arguable issues to appeal—that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them—and (2) there is reasonable probability that, but for counsel's failure to raise the issue, petitioner would have prevailed on his appeal. *Smith v. Robbins,* 528 U.S. 259, 285-86 (2000).

If trial counsel's performance was not objectively unreasonable or did not prejudice petitioner, then appellate counsel did not act unreasonably in failing to raise a meritless claim of ineffective assistance of counsel and petitioner is not prejudiced by appellate counsel's omission. *Moormann v. Ryan,* 628 F.3d 1102, 1107 (9th Cir. 2010).

The Washington Supreme Court issued a reasoned opinion on the merits of this claim, thus, the Court looks to the Washington Supreme Court's ruling denying review. *See* Dkt. 11-3, p. 381. *See Van Lynn v. Farmon,* 347 F.3d 735, 738 (9th Cir. 2003)("Pursuant to 29 U.S.C. § 2254(d), we review the state court's decision to determine whether the state court's adjudication of the claim 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"). Here, the Washington Supreme Court held:

> [] [Petitioner] reasons[that] appellate counsel cited to matters outside the record. And he claims the State did the same in its appellate brief. But as the acting chief correctly determined, [petitioner] demonstrates no prejudice. He urges that the Court of Appeals must have based its decision affirming his conviction on facts outside the record, but he does not show that it did so or even may have done so. The video recording in its entirety was included in the record on appeal (through a supplemental designation of clerk's papers), and as indicated, the trial court admitted the entire recording into evidence. [Petitioner] demonstrates no reliance by the Court of Appeals on evidence outside the record.

Dkt. 11-3, p. 382.

1    There is an insufficient basis to conclude that petitioner's appellate counsel's actions and

2    the resulting Washington Supreme Court ruling 'resulted in a decision that was based on an

3    unreasonable determination of the facts in light of the evidence presented in the State court

4    proceeding. The Supreme Court's factual finding that there was no showing that petitioner was

5    prejudiced by the omission of the transcription from the appellate record was not unreasonable in

6    light of the evidence. *See* Dkt. 11-3, p. 382.  Thus, petitioner has failed to demonstrate that the

7    state appellate court's rejection of this claim was contrary to, or an unreasonable application of,

8    established federal law as determined by the United States Supreme Court, or was an

9    unreasonable determination of the facts considering the evidence presented. *See Van Lynn,* 347

10   F.3d at 738.  Accordingly, the Court recommends that this claim be denied.

11   **II.    Ineffective Assistance of Defense Counsel at Trial**

12   In his second ground for relief, petitioner argues that he was denied the right to effective

13   assistance of trial counsel on two bases. First, petitioner claims that trial counsel failed to request

14   two different audio versions of the police interrogation—one complete version, and one

15   containing only the portions published to the jury. Dkt. 7, p. 7. Second, petitioner argues that trial

16   counsel "failed to object to the playing of nonexpert opinion of [inadmissible evidence]." Dkt. 7,

17   p. 7.

18   Respondent asserts that petitioner's claim for ineffective assistance of counsel is

19   procedurally barred because, although petitioner raised ineffective assistance in his personal

20   restraint petition, he alleged substantively different claims—that counsel failed to object to

21   prosecutorial and jury misconduct. Dkt. 10, p. 15-16. Therefore, respondent argues that petitioner

22   did not exhaust his state court remedies for his present ineffective assistance claims, resulting in

23

24

1  a procedural bar. Dkt. 10, p. 16. Moreover, petitioner is now time-barred from raising his present

2  ineffective assistance claims in state court. Dkt. 10, p. 16.

3      *Exhaustion*

4      A state prisoner seeking habeas corpus relief in federal court must exhaust available state

5  relief prior to filing a petition in federal court. *See* 28 U.S.C. § 2254. As a threshold issue the

6  court must determine whether or not petitioner has properly presented the federal habeas claims

7  to the state courts. 28 U.S.C. § 2254(b)(1) states, in pertinent part:  (b)(1) An application for a

8  writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court

9  shall not be granted unless it appears that: (A) the applicant has exhausted the remedies available

10  in the courts of the state; or (B)(i) there is an absence of available state corrective process; or (ii)

11  circumstances exist that render such process ineffective to protect the rights of the applicant. If

12  respondent intends to waive the defense of failure to exhaust state remedies, respondent must do

13  so explicitly.  28 U.S.C. § 2254 (b)(3).

14      Claims for relief that have not been exhausted in state court are not cognizable in a

15  federal habeas corpus petition. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994).  A petitioner must

16  properly raise a habeas claim at every level of the state courts' review.  *See Ortberg v. Moody*,

17  961 F.2d 135, 138 (9th Cir. 1992).  A petitioner can satisfy the exhaustion requirement by

18  providing the highest state court with a full and fair opportunity to consider all claims before

19  presenting them to the federal court. *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Middleton v.*

20  *Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985).  Full and fair presentation of claims to the state court

21  requires "full factual development" of the claims in that forum.  *Kenney v. Tamayo-Reyes*, 504

22  U.S. 1, 8 (1992).

23

24

1    Here, petitioner raised substantively different ineffective assistance of counsel claims in

2   his personal restraint petition. In his personal restraint petition, petitioner alleges that he received

3   ineffective assistance of his defense counsel because defense counsel failed to object to

4   prosecutorial misconduct (Dkt. 11-1, p. 823), and failed to object to "one of the jurors

5   overhearing the State prosecutors talking about the case . . ." (Dkt. 11-1, p. 826-27). However, in

6   his claim before the district court, petitioner asserts that he received ineffective assistance of

7   counsel when defense counsel "did not ask the prosecutor to create two different disk [sic] to

8   review before trial (one original Ex.19 and one edited/altered version)" and "failed to object to

9   the playing of nonexpert opinion of the '21 foot rule'." Dkt. 7, p. 7. However, a petitioner

10  "must describe in the state court proceedings both the operative facts and the federal legal theory

11  on which his claim is based." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). General appeals to

12  broad constitutional principles such as due process, equal protection, or the right to a fair trial are

13  not sufficient. *Hiivala v. Wood*, 195 F. 3d 1098, 1106 (9th Cir. 1999). Therefore, petitioner's

14  claim is not saved merely because he raised a general claim of ineffective assistance of counsel

15  in his personal restraint petition.

16    In his personal restraint petition, petitioner asserts that the trial court failed to create an

17  adequate record for appeal. Dkt. 11-1, p. 818. Specifically, he alleges that "[t]here is no

18  transcript that exists of the edited "selected portions" version that was actually played for the

19  jury. The record only shows – (WHEREUPON THE VIDEOTAPE WAS PLAYED) – [citation

20  omitted]. There is not a complete record of what the jury heard of [petitioner's] statement." Dkt.

21  11-1, p. 818. This is a somewhat similar claim to the ineffective assistance claim petitioner

22  makes before the district court. However, the Supreme Court has held that it is not enough that

23  all the facts necessary to support the federal claim were before the state courts or that a

24

1  somewhat similar state law claim was made. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)

2  (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971) and *Anderson v. Harless*, 459 U.S. 4 (1982)).

3  Therefore, petitioner has not exhausted his state court remedy because he did not fairly present

4  his ineffective assistance of counsel claim before the state court.

5      Whether a claim is exhausted is distinct from whether a claim is procedurally defaulted in

6  the habeas context. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002).  A claim is not

7  exhausted when the state court has never been presented with an opportunity to consider a

8  petitioner's claims and that opportunity may still be available to the petitioner under state law.

9  28 U.S.C. § 2254(c).  In contrast, a claim is procedurally defaulted when it is clear that the state

10  court has been presented with the federal claim but declined to reach the issue for procedural

11  reasons or it is clear that the state court would hold the claims procedurally barred. *Franklin,*

12  290 F.3d at 1230-31. If a petitioner's claims are procedurally barred under state law, they are

13  deemed to be procedurally defaulted for purposes of federal habeas review. *Coleman v.*

14  *Thompson*, 501 U.S. 722, 735 n.1 (1991).

15      Here, petitioner's ineffective assistance of counsel claim is procedurally barred under

16  state law. Under Washington law, a defendant may not collaterally challenge a conviction more

17  than one year after the conviction becomes final.  RCW 10.73.090(1).  *See also Aguilar v.*

18  *Washington*, 77 Wn. App. 596, 603 (1995) (applying Washington's one-year time limit as a

19  mandatory bar).  If a prisoner files a direct appeal of his conviction and sentence, "then the

20  judgment is final when the appellate court issues its mandate 'disposing of the direct appeal.'"

21  *In re Skylstad*, 160 n.2d 944, 948-49 (2007) (quoting RCW 10.73.090(3)(b)). Petitioner's

22  conviction became final for purposes of state law on January 16, 2018. Dkt. 11-1, p. 794.

23

24

1    Because more than one year has passed since his conviction became final, petitioner's claim for

2    ineffective assistance of counsel is now time-barred in state court.

3    Washington law also prohibits the filing of successive collateral challenges.  RCW

4    10.73.140; RAP 16.4(d). Petitioner previously filed a personal restraint petition and is, therefore,

5    barred from filing another collateral challenge absent a showing of good cause.  Because his

6    claims are procedurally barred under Washington law, the claims are not cognizable in a federal

7    habeas corpus petition absent a showing of cause and prejudice or actual innocence. However,

8    the Supreme Court has carved a narrow exception to excuse defaulted claims alleging ineffective

9    assistance of trial counsel.

10    *Martinez Exception*

11    In *Martinez v. Ryan*, the Court held that a procedural default in ineffective assistance of

12    council claims may be excused where an indigent prisoner did not have counsel in his state post-

13    conviction proceedings. 566 U.S. 1 (2012). Although the state in *Martinez* did not allow

14    ineffective assistance of counsel claims to be brought on direct review, in *Trevino v. Thaler*, the

15    Supreme Court extended the exception to include states where it is virtually impossible to

16    adequately present an ineffective assistance of trial counsel claim on direct review.  569 U.S.

17    413, 423 (2013).  The Ninth Circuit has since held that Washington is one such state.  *See Woods*

18    *v. Sinclair*, 764 F.3d 1109, 1137 (9th Cir. 2014) (citing *State v. McFarland*, 127 Wn.2d 322, 335

19    (1995)).

20    Under the *Martinez* rule, to show cause for procedural default, the petitioner must

21    "demonstrate that the underlying ineffective-assistance-of-trial-counsel-claim is a substantial

22    one, which is to say that the prisoner must demonstrate that the claim has some merit."  566 U.S.

23    at 14.  To show ineffective assistance of counsel, a petitioner must satisfy a two-part standard.

24

1   First, the petitioner must show counsel's performance was so deficient that it "fell below an

2   objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

3   Second, the petitioner must show the deficient performance prejudiced the defense so "as to

4   deprive the defendant of a fair trial, a trial whose result is unreasonable." *Id*.  The petitioner

5   must satisfy both prongs to prove his claim of ineffective assistance of counsel.  *Id*. at 697. A

6   reviewing court may address either prong, as a failing on one prong is dispositive to a

7   petitioner's claim.  *See id.* at 697. Moreover, because counsel has wide latitude in deciding how

8   best to represent a client, review of counsel's representation is highly deferential and is "doubly

9   deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540

10  U.S. 1, 5-6 (2003).

11      Under the first prong, the petitioner must specifically show "counsel made errors so

12  serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

13  Amendment." *Strickland*, 466 U.S. at 687.  The proper measure of attorney conduct remains

14  reasonableness under prevailing professional norms.  *Wiggins v. Smith*, 539 U.S. 510, 521

15  (2003).  To avoid the temptation to second-guess counsel's decisions, counsel is "'strongly

16  presumed to have rendered adequate assistance and made all significant decisions in the exercise

17  of reasonable professional judgment.'" *Pinholster*, 563 U.S. at 189.  (*quoting Strickland*, 466

18  U.S. at 690).  The courts must "begin with the premise that 'under the circumstances, the

19  challenged action[s] might be considered sound trial strategy.'" *Id.* at 191 (*quoting Strickland*,

20  466 U.S. at 689).

21      Under the second prong, the petitioner must prove prejudice from counsel's

22  representation. *Pinholster*, 563 U.S. at 189.  It is not enough that counsel's errors had "some

23  conceivable effect on the outcome."  Rather, the petitioner must show "that, but for counsel's

24

1    unprofessional errors, the result would have been different." *Strickland*, 466 U.S. at 693-94.

2    "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*,

3    563 U.S. at 189 (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

4         Petitioner raises two grounds of ineffective assistance of trial counsel: (1) that counsel

5    failed to request two different audio versions of the police interrogation; and (2) that counsel

6    "failed to object to the playing of nonexpert opinion of the '21 foot rule'. [sic]" Dkt. 7, p. 7.

7    Assuming petitioner succeeds on the first prong of the *Strickland* standard, his argument fails to

8    show a substantial likelihood of a different result. 466 U.S. at 687; *Pinholster*, 563 U.S. at 189

9    (quoting *Richter*, 562 U.S. at 112).

10        Trial counsel's alleged errors did not prejudice petitioner. While it is conceivable that

11    results would have been different if the record had been perfected and if no inadmissible

12    testimony had been played, petitioner fails to show a substantial likelihood that the outcome

13    would have changed.  Petitioner's defense was that the victim charged at him with a knife and

14    that he shot the victim in self-defense. Dkt. 11-1, p. 779-81. However, there is overwhelming

15    evidence that the victim did not have a knife in his hand when he was shot. The first responders

16    testified that they did not see a knife near the victim, nor did the police investigators. Dkt. 11-1,

17    p. 779-81. An expert testified that the victim did not have any defensive wounds, indicating that

18    no physical altercation took place prior to the shooting. Dkt. 11-1, p. 779-81. Therefore, an

19    abundance of evidence remains, even if counsel's errors were cured, to support the jury's verdict.

20    **III.     Prosecutorial Misconduct**

21        Petitioner argues that the prosecutor violated petitioner's due process in the following

22    ways: (1) failing to provide to defense counsel or the clerk with a copy of the version of Exhibit

23    19 that was played to the jury; (2) entering inadmissible opinion testimony of the 21-foot rule

24

through playing the prosecutor's version of Exhibit 19; (3) improperly vouching for the State's witness; (4) improperly commenting on petitioner's veracity; (5) improperly supporting the 21-foot rule opinion evidence "with his own opinions placing the prestigiousness of the State upon this 'rule'. [sic]" Dkt. 7, p. 8.

The relevant inquiry is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Parker v. Matthews*, 567 U.S. 37, 45 (2012). (per curiam) (*Darden* standard is "clearly established Federal law" for purposes of 28 U.S.C. § 2254(d)). A trial error is presumed to be harmless unless the error had "substantial or injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). It is the petitioner's burden to state facts that point to a real possibility of constitutional error in this regard. *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir.1990).

Closing arguments are not evidence and ordinarily carry less weight with the jury than the court's instructions. *Boyde v. California*, 494 U.S. 370, 384 (1990); *Houston v. Roe*, 177 F.3d 901, 909 (9th Cir. 1999). Prosecutorial argument should not result in reversal where the trial court instructed the jury that its decision is to be based solely upon the evidence, where the defense did not object, where the comments were an "invited response," or where there is overwhelming evidence of guilt. *Darden*, 477 U.S. at 182; *Donnelly v. DeChristoforo*, 416 U.S. 637, 640–45 (1974); *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir.1993); *Hall v. Whitley*, 935 F.2d 164, 165–66 (9th Cir.1991).

The Washington Court of Appeals determined the following:

> Next, petitioner raises several claims of prosecutorial misconduct. To prevail on a claim of prosecutorial misconduct, a petitioner must show that the conduct was both improper and prejudicial. *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 496 (2010).

[Petitioner] first contends that the State committed misconduct on appeal by stating in its response brief facts outside the appellate record. Again, petitioner incorrectly asserts in his petition that prejudice is presumed. And although he baldy [sic] asserts for the first time in his reply that the State's reliance on facts outside the record prejudiced him, he does not explain how the result of his appeal would have differed but for the State's alleged reliance on facts outside the record. Accordingly, this claim cannot succeed.

Next, [petitioner] contends that the prosecutor committed misconduct during closing argument by improperly expressing an opinion on the credibility of a witness. It is improper for a prosecutor to "express[] his or her personal belief as to the veracity of the witness." *State v. Ish,* 170 Wn.2d 189, 196 (2010). "Prosecutors may, however, argue an inference from the evidence, and prejudicial error will not be found unless it is 'clear and unmistakable' that counsel is expressing a personal opinion." *State* v. *Brett,* 126 Wn.2d 136, 175 (1995) (quoting *State, v. Sargent.* 40 Wn. App. 340, 344 (1988)). [Petitioner] argues that the following closing arguments made by the State improperly vouched for the credibility of a witness:

> Her life is a train wreck. That's plain, but they didn't show that she's a liar. Her life was shattered by this thing when the only person that ever showed her any love was killed by that guy over there. And what you need to keep in mind is that the whole purpose of that silencer argument—we're not saying he used the silencer—the point is this: Sara told you the truth about the silencer. He lied about it to the police on his statement.

> The only inconsistency that was pointed out to Sara on her cross-examination was her remembering whether or not she actually saw the gun or not.  The first statement she didn't, the second one she did. Okay. but that's his entire case, regarding whether or not you should believe her or not. You look at all of the inconsistencies in [petitioner's] statement: first of all, open the door. Is Sara over here or over there?  I don't know.  Go get the gun.  Was the gun in the safe or in the closet?  Well, he gave two different versions on that.  He said that he heard Sara getting what he thought was choked out.  Sara said, no, that's nonsense, he wasn't choking me out.  He thought that he heard thumping on the wall.  The fact that Mr. Enbody pointed the nail thing out he was asking Sara did you hit your head on a nail?  No. something fell down. but she was emphatic about not getting her head hit on a nail.

[Citation omitted]. Examining the prosecutor's closing argument in context, it is clear that the prosecutor was arguing about the credibility of witnesses based on

inferences from the evidence and not based on a personal opinion. Accordingly, [petitioner] fails to demonstrate misconduct on this ground.

Next. [petitioner] contends that the prosecutor committed misconduct at closing by stating facts that were not in evidence. But all of the facts recited by the prosecutor at closing that [petitioner] contends were not in evidence were contained in the portion of the video exhibit played to the jury. [Citation omitted].

Next, [petitioner] appears to argue, for the first time in his reply brief, that the prosecutor committed misconduct by playing a portion of exhibit 19 to the jury in violation of the trial court's ruling that the State could not offer opinion testimony regarding his ability to draw a gun against a close-range assailant. Because [petitioner] raises this argument for the first time in his reply brief. we do not address it. *In re Pers.Restraint of Krier,* 108 Wn. App. 31, 37 n. 4 (2001).

The Washington Supreme Court similarly found that the prosecutor properly argued inferences from the evidence and, if misconduct had occurred, petitioner failed to demonstrate that it resulted in prejudice:

Mr. Miller also contends that he [sic] prosecutor committed prejudicial misconduct in closing argument by offering an opinion on the credibility of a witness. But the acting chief judge thoroughly reviewed this issue and determined that the prosecutor did not offer an improper personal opinion but properly argued inferences from the evidence. See *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995). Mr. Miller does not show that the acting chief judge's determination conflicts with any other appellate decision or that this issue is of substantial public interest or sufficient constitutional significance to merit this court' s review. And again, he demonstrates no prejudice even if misconduct occurred.

Dkt. 11-3, p. 383-84.

As previously stated, the Washington state courts did not unreasonably apply clearly established federal law in rejecting petitioner's prosecutorial misconduct claim. The Washington Supreme Court did not make an unreasonable determination of fact in finding that the prosecutor's comments, even if improper, did not result in prejudice, and that the prosecutor's comments constituted an inference to be drawn from the evidence presented.

Moreover, the jurors were instructed that the lawyer's remarks and statements were not evidence and that the evidence was the testimony and the exhibits. Dkt. 11-1, p. 492. The jury

1   was also instructed, "[y]ou must not let your emotions overcome your rational thought process.

2   You must reach your decision based on the facts provided to you and on the law given to you,

3   not on sympathy, prejudice, or personal preference." Dkt. 11-1, p. 493. Thus, the trial court cured

4   any error by its reading of the jury instructions. *See United States v. McKoy,* 771 F.2d 1207,

5   1213 (9th Cir. 1985). The jury is presumed to follow the instructions it is given. *Penry v.*

6   *Johnson,* 532 U.S. 782, 799 (2001); *Weeks v. Angelone,* 528 U.S. 225, 234 (2000). The jury also

7   is presumed to follow a court's curative instructions, unless there is an "overwhelming"

8   likelihood that it cannot. *See Greer v. Miller,* 483 U.S. 756, 766 n. 8 (1987). There is nothing in

9   the record that indicates the jurors did not do so in this case, and there is no basis for speculating

10  otherwise. Accordingly, the Court finds that petitioner did not carry his burden to provide facts

11  showing that the prosecutors statements during closing argument "so infected the trial with

12  unfairness" that a due process violation occurred. *Darden*, 477 U.S. at 181; *O'Bremski*, 915 F.2d

13  at 420.

14  **IV.    Denial of Due Process by Failing to Correct the Record**

15          Petitioner alleges in his fourth ground for relief that the Court of Appeals and the

16  Supreme Court denied petitioner's right to due process and equal protection because they did not

17  remand his case to the trial court to perfect the record. Dkt. 7, p. 10.  Petitioner states that "[o]nce

18  it was established that there is a missing record . . . [i]t was the courts obligation to remand

19  [petitioner] back to Superior Court to correct the record." Dkt. 7, p. 10.  Alternatively, petitioner

20  argues that the state courts should have remanded for a new trial. Dkt. 7, p. 10.

21          Petitioner raised this issue for the first time in his Motion for Discretionary Review. Dkt.

22  11-3, p.143.  The Washington Supreme Court denied review of this issue in part because

23  petitioner failed to show that he was prejudiced by the failure to correct the record. Dkt. 11-3, p.

24

1    208.  The Supreme Court has held that the proper "question under AEDPA is not whether a

2    federal court believes the state court's determination was incorrect, but whether that

3    determination was unreasonable—a substantially higher threshold." *Schiro v. Landrigan,* 550

4    U.S. 465, 473 (2007).  As discussed in section two above, ample evidence supports the jury's

5    verdict even where errors are cured. Therefore, the Washington Supreme Court did not

6    unreasonably apply clearly established federal law, nor make an unreasonable determination of

7    the facts in light of the evidence. *See* 28 U.S.C. § 2254(d).

8         Accordingly, for the reasons set forth above, this Court recommends that petitioner's

9    request for habeas relief be denied.

10

11              **CERTIFICATE OF APPEALABILITY**

12        Petitioners seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

13    court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

14    (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

15    has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

16    2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

17    disagree with the district court's resolution of his constitutional claims or that jurists could

18    conclude the issues presented are adequate to deserve encouragement to proceed further."

19    *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484

20    (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a

21    certificate of appealability with respect to this petition.

22

23

24

1

## CONCLUSION

2   Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

3 fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

4 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

5 review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

6 of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

7 *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

8 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June

9 7, 2019, as noted in the caption.

10   Dated this 20th day of May, 2019.

11

12

13

14 J. Richard Creatura
United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24